974 F.2d 77
 S. Fred EVERETT, M.D., Appellant,
v.
ST. ANSGAR HOSPITAL, a Minnesota non-profit corporation;
Franciscan Sisters Healthcare, Inc., a Minnesota non-profit
corporation; The Franciscan Sisters of Little Falls,
Minnesota, a Minnesota non-profit corporation, Appellees.
 No. 91-3639.
 United States Court of Appeals,
Eighth Circuit.
 Submitted June 8, 1992.
Decided Sept. 1, 1992.
 
 James M. Williams, Minneapolis, Minn., argued, for appellant.
 Bernard E. Reynolds, Moorhead, Minn., argued (John R. Kenefick, St. Paul, Minn., Randolph E. Stefanson and Daniel D. Plambeck, Moorhead, Minn., for Franciscan Sisters Health Care and Franciscan Sisters of Little Falls, Minn.; Dean A. Hoistad, Moorhead, Minn., for St. Ansgar Hosp., on brief), for appellees.
 Before BOWMAN, LOKEN, Circuit Judges, and HUNTER,* Senior District Judge.
 BOWMAN, Circuit Judge.
 
 
 1
 This is a diversity case. The plaintiff, S. Fred Everett, asserts various state law claims. He appeals from the orders of the District Court[1] granting summary judgment to all defendants. We affirm.
 
 
 2
 Everett has been a practicing physician in the Fargo, North Dakota--Moorhead, Minnesota area since 1965. From 1981 until July 18, 1988, he had medical staff and clinical privileges at St. John's Hospital in Fargo.[2] On July 18, 1988 he was summarily suspended from his hospital privileges pursuant to the hospital's by-laws. Thereafter, the hospital's chief administrator instituted a complaint against Everett pursuant to the by-laws, which resulted in Everett's hospital privileges being revoked on April 6, 1989.
 
 
 3
 Everett filed this action in the District of Minnesota on August 19, 1988, alleging that his summary suspension amounted to a breach of contract by appellee Franciscan Sisters Healthcare, Inc. ("FSH"). He moved for a temporary restraining order and a preliminary injunction enjoining FSH from enforcing the summary suspension. The federal district court in Minnesota denied Everett's motions and granted FSH's motion for dismissal for failure to join the indispensable proper defendant, St. Ansgar Hospital (doing business as St. John's Hospital, see n. 2, supra ).
 
 
 4
 In October 1989, we affirmed the dismissal of FSH for failure to sue the indispensable proper defendant, but remanded the case "for the purpose of permitting amendment of the complaint by adding the proper party as defendant." Everett v. Franciscan Sisters Healthcare, Inc., 882 F.2d 1383, 1389 (8th Cir.1989). On remand, Everett amended his complaint to include St. Ansgar Hospital, its corporate parent FSH, and The Franciscan Sisters of Little Falls ("Little Sisters"), FSH's corporate parent, as parties. He also amended his complaint to allege not only breach of contract for the summary suspension, but also breach of contract for the revocation of his hospital privileges, and tort claims for bad faith termination of contract and wrongful interference with contract. The federal district court in Minnesota thereafter granted the defendants' motion for change of venue, transferring the case to the District of North Dakota.
 
 
 5
 In November 1990, the federal district court in North Dakota ("the District Court") granted the motions of FSH and Little Sisters for summary judgment, stating that the res judicata effect of our 1989 decision barred Everett from pursuing his claims against either of these two parties. In October 1991, the court granted St. Ansgar Hospital's motion for summary judgment, holding that there was no dispute as to whether Everett received his contractual due process rights and that there was no evidence of bad faith or malice on the part of St. Ansgar's. On appeal, Everett challenges the change of venue and the granting of summary judgment to all three defendants.
 
 
 6
 "The grant or denial of a change of venue is in the discretion of the trial court and may not be set aside absent a clear showing of abuse of discretion." Hubbard v. White, 755 F.2d 692, 694 (8th Cir.), cert. denied, 474 U.S. 834, 106 S.Ct. 107, 88 L.Ed.2d 87 (1985). Everett falls far short of such a showing; thus, we refuse to reverse the change of venue.
 
 
 7
 We turn next to the District Court's order granting FSH's and Little Sisters' motions for summary judgment. When we first addressed this case, we had before us an appeal from the dismissal of FSH. We explicitly affirmed that dismissal, holding "judgment of dismissal as to appellee [FSH] must be affirmed," Everett, 882 F.2d at 1387, and "the District Court's dismissal of Dr. Everett's pending action against appellee [FSH] must therefore be affirmed," id. at 1389. We held that dismissal as to FSH was appropriate because "[n]o agency, alter ego, or piercing [of] the corporate veil[ ] affords occasion in the case at bar to depart from the settled rule of respecting the separate corporate identities of the entities involved." Id. at 1388 n. 13. Although our holding was limited to FSH, it applies equally to Little Sisters. Since St. Ansgar (doing business as St. John's) was not acting as the alter ego of its corporate parent (FSH), it follows, in the absence of any evidence presented by Everett to the contrary, that it also was not acting as the alter ego of its "grandparent" (Little Sisters, which is FSH's corporate parent). The District Court properly granted summary judgment to FSH and Little Sisters.[3]
 
 
 8
 Finally, we turn to Everett's claims against St. Ansgar. He alleges that his summary suspension and subsequent revocation of his hospital privileges amounted to a breach of contract, tortious interference with contract, and tortious termination of contract. Although neither party deemed it necessary to address the choice of law issue, we assume that in this diversity case the law of North Dakota is the applicable law, as the District Court cited North Dakota law in its order granting summary judgment and both parties make occasional reference to North Dakota law.
 
 
 9
 In North Dakota, an at-will employment state, "an employer may agree to restrict or limit his right to discharge an employee" contractually. Hillesland v. Federal Land Bank Ass'n, 407 N.W.2d 206, 214 (N.D.1987). In such a case, the employer legally can discharge an employee "only in accordance with the contractual terms." Lambott v. United Tribes Educ. Technical Ctr., 361 N.W.2d 590, 593 (N.D.1985). Since Everett agreed in his application for hospital privileges to be bound by the hospital's by-laws, we must examine those by-laws in order to determine if there is a factual dispute on the breach-of-contract issue, a chore made difficult and unnecessarily time-consuming by the fact that neither party saw fit to include the by-laws in any filing with this court.[4]
 
 
 10
 A review of the by-laws convinces us that nothing in Everett's allegations amount to a violation of the procedures to which he was entitled. Even if there was such a violation, however, Everett waived his right to sue for a breach of the contract. When he applied for hospital privileges, Everett specifically acknowledged that with respect to actions taken for the purpose of achieving and maintaining an acceptable level of patient care "there shall, to the fullest extent permitted by law, be absolute immunity from civil liability arising from any such act.... [S]uch immunity shall apply to all acts ... performed or made in connection with this ... health care institution['s] activities related ... to ... corrective action." St. John's Bylaws, Art. 14. In order for this waiver to apply, the act in question must have been "performed or made in good faith and without malice." Id. Thus, Everett can prevail only if he can present evidence sufficient to support a claim that the hospital's actions were taken against him in bad faith or with malice.
 
 
 11
 Bold-faced, capitalized, but unsupported bare allegations, do not, however, a genuine issue of material fact make. Stripped of their rhetorical flourishes, Everett's strident claims boil down to accusations that St. Ansgar's corrective actions against him were a foregone conclusion: that for some reason, St. Ansgar's administrators decided to get rid of him and thereby in bad faith and with malice merely paid lip service to Everett's contractual due process rights and "stacked the deck" when forming the various reviewing committees, all of which recommended the corrective action that the hospital ultimately took. He also alleges that the third-party peer review of his work, which was the basis for the formal complaints against him, was a pre-ordained undertaking performed by a biased panel in bad faith and with malice.
 
 
 12
 Without any support for these allegations, however, this case must be summarily dismissed. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986) (no genuine issue of material fact where a party fails to make a sufficient showing of the existence of an essential element of the case). We decline to adopt Everett's argument that because the third-party peer review was conducted in secret, without his input as to who the reviewers should be, there is a necessary inference of malice. See Everett, 882 F.2d at 1386-87 (stating that the decisions to use a third-party peer review organization and not to notify Everett of such a review was acceptable); Soentgen v. Quain & Ramstad Clinic, 467 N.W.2d 73, 79-80 (N.D.1991) (third-party peer review "does not support a negative inference of actual malice"). The affidavits of physicians questioning the propriety of the disciplinary action do not support the allegations of bad faith and malice; they simply question the medical judgment upon which the disciplinary action was based. In the absence of bad faith or malice, St. Ansgar's was entitled to rely on the professional judgment of the reviewing committees. Everett's claim of a wide-ranging conspiracy against him is completely without evidentiary support; it too must fall.[5]
 
 
 13
 The District Court's orders granting the defendants' motions for summary judgment are affirmed.
 
 
 
 *
 The HONORABLE ELMO B. HUNTER, Senior United States District Judge for the Western District of Missouri, sitting by designation
 
 
 [1]
 The Honorable Rodney S. Webb, United States District Judge for the District of North Dakota
 
 
 [2]
 Before 1986, St. John's Hospital was an independent hospital. In 1986, it was sold to appellee Franciscan Sisters Healthcare, Inc., which owned, among other health care institutions, St. Ansgar Hospital in Moorhead, Minnesota. (St. John's Hospital is located approximately one mile from St. Ansgar Hospital). In the early part of 1988, St. John's Hospital became a part of St. Ansgar Hospital, but continued to operate under the trade name of St. John's Hospital. See Everett v. Franciscan Sisters Healthcare, Inc., 882 F.2d 1383, 1388 (8th Cir.1989)
 
 
 [3]
 Everett's fixation on our use of the word "adding" rather than "substituting" in our prior opinion is misplaced. Our opinion unequivocally affirmed the dismissal of FSH; the order directing the trial court to allow the "addition" of St. Ansgar Hospital as the proper defendant does not change that. See Everett, 882 F.2d at 1389
 
 
 [4]
 Why neither side would provide to this court a copy of the contract at issue in a breach of contract case is perplexing, to be charitable. It is a totally unacceptable practice simply to cite to appendices from a previous appeal that was argued (and decided) over three years ago
 
 
 [5]
 Our analysis applies equally to Everett's tort claims: he has failed to show the existence of a genuine issue of a material fact; namely, bad faith or malice. See also Soentgen v. Quain & Ramstad Clinic, 467 N.W.2d 73, 84 (N.D.1991) (claimant must show a breach of contract in order to prevail on an interference-with-contract claim)